NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUN 21 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MORIAH ZEIGLER, | No. 23-55381 |
| Plaintiff-Appellant, | D.C. No. 2:17-cv-09295-MWF-AFM |
| v. | |
| COUNTY OF SAN LUIS OBISPO; COUNTY OF SAN LUIS OBISPO DEPARTMENT OF SOCIAL SERVICES; SAN LUIS OBISPO COUNTY SHERIFFS DEPARTMENT; TERI WARKENTIN; DIANA STEINHAUER, an individual; LINDA GENDRON, an individual; DESILYN TRAHAN, an individual; JOCELYN MCCURRY, an individual; GREGORY ROACH, an individual; ALFREDO CAMPOS, an individual | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Submitted May 6, 2024[**]
Pasadena, California

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before: WARDLAW, CHRISTEN, and BENNETT, Circuit Judges.

Moriah Zeigler appeals the district court's grant of summary judgment in favor of the County of San Luis Obispo ("County") and individual defendants Teri Warkentin, Diana Steinhauer, Linda Gendron, and Desilyn Trahan. Zeigler alleges a violation of her Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 and state law claims arising from the County's warrantless removal and placement of her one-year-old son E.Z. into protective custody. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1. The district court did not err by concluding that exigent circumstances justified E.Z.'s warrantless removal. *See Mabe v. San Bernadino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110 (9th Cir. 2001). The undisputed evidence demonstrates that Warkentin and Steinhauer had ample "information at the time of the seizure that establishe[d] 'reasonable cause to believe that the child [wa]s in imminent danger of serious bodily injury.'" *Id.* (quoting *Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 2000)). On April 24, 2017, Sean Dover ("Mr. Dover"), called the County's Child Welfare Services' ("CWS") child abuse hotline and reported that Zeigler was hitting E.Z. and that he thought the situation was going to worsen. In response, Warkentin and Steinhauer visited Zeigler at her home that afternoon. Zeigler's younger brother told Warkentin that he had seen Zeigler hit E.Z. on multiple occasions, that he feared for E.Z.'s safety, and that Warkentin

should take a closer look at E.Z.'s back because Zeigler had hit E.Z. that morning. Both Warkentin and Steinhauer found an injury on E.Z.'s back that looked like red, swollen fingermarks, for which Zeigler offered inconsistent explanations. Because the social workers had reasonable cause to believe that E.Z. was in imminent danger and because the earliest the County could have obtained a warrant would have been the next day, E.Z.'s warrantless removal from the home was lawful.[1] *See Rogers v. City of San Joaquin*, 487 F.3d 1288, 1295–96 (9th Cir. 2007) ("Serious allegations of abuse that have been investigated and corroborated usually give rise to a 'reasonable inference of imminent danger sufficient to justify taking children into temporary custody' if they might again be beaten or molested during the time it would take to get a warrant.") (quoting *Ram v. Rubin*, 118 F.3d 1306, 1311 (9th Cir. 1997)).

2. Nor did the district court err by concluding in the alternative that the social workers are entitled to qualified immunity. Under the two-pronged qualified immunity test, we ask whether the facts show that an official violated a constitutional right, and whether that right was "clearly established" at the time of the alleged violation. *Demaree v. Pederson*, 887 F.3d 870, 878 (9th Cir. 2018).

---

[1] Although Cassandra Dover ("Mrs. Dover"), Zeigler's mother, was also present in the home, it remained necessary to remove E.Z. because Mrs. Dover refused to believe that E.Z. had been abused and appeared to be hostile towards the investigation. Thus, it was reasonable for the social workers to believe that Mrs. Dover would not protect E.Z. from imminent injury. *See Mabe*, 237 F.3d at 1110.

3

As of April 24, 2017, it was "well-settled that a child [cannot] be removed without prior judicial authorization absent evidence that the child was in imminent danger of serious bodily injury." *Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 792 (9th Cir. 2016) (en banc). But no case has addressed what constitutes "imminent" danger in circumstances like those that occurred here—involving corroborated allegations of repeated physical abuse. Thus, "[n]o matter how carefully a reasonable social worker had read our case law, she could not have known that seizing [E.Z.] would violate federal constitutional law. Without that fair notice, the social workers in this case are entitled to qualified immunity." *Id.* at 793.

3. The district court properly concluded that Zeigler failed to show that Gendron and Trahan committed judicial deception by submitting a report to the juvenile court that stated that E.Z.'s head was "slightly flat, which is indicative of lying in a crib for long periods of time." To survive summary judgment on a claim of judicial deception, a plaintiff "must (1) establish that the warrant affidavit contained misrepresentations or omissions material to the finding of probable cause, and (2) make a 'substantial showing' that the misrepresentations or omissions were made intentionally or with reckless disregard for the truth." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011). Gendron, a County social worker, drafted E.Z.'s detention report, which Trahan, her supervisor, cosigned. Gendron based her report on her interview with Buffy Ramirez, the lead

4

nurse at the medical office where Dr. Sam Slishman conducted E.Z.'s Suspected Child Abuse and Neglect ("SCAN") exam. There is no dispute that Ramirez told Gendron that E.Z. had a slightly flat head from lying down for a prolonged period. Accordingly, Gendron merely included information in E.Z.'s detention report that was conveyed to her by Ramirez, who had knowledge of E.Z.'s SCAN exam. Thus, Gendron and Trahan's report does not rise to the level of a deliberate falsehood, or a statement made in reckless disregard for the truth. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076–77 (9th Cir. 2001) (en banc) ("Failing to follow guidelines or to carry out an investigation in a manner that will ensure an error-free result is one thing; intentionally fabricating false evidence is quite another.").

4. Because Zeigler fails to show that Gendron or Trahan committed judicial deception, the district court properly concluded that Zeigler was barred from bringing claims based on E.Z.'s continued detention after the juvenile court's April 27, 2017 order. *See Coverdell v. Dep't of Soc. & Health Servs.*, 834 F.2d 758, 765 (9th Cir. 1987) (concluding that officials who execute valid court orders are absolutely immune from liability for damages in civil rights actions challenging conduct authorized by the order).

**AFFIRMED.**

5